PETERSON ELECTRO MUSICAL PRODUCTS, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 82–5–00626

Before CARMAN, *Judge.*

(Dated May 30, 1984)

*Stack & Filpi,* (*Mark D. Debofsky* at the trial) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, (*Jerry P. Wiskin* at the trial) for the defendant.

CARMAN, *Judge:* The issue in this case is whether certain imported merchandise, a chromatic tuning instrument known as a "Strobo Tuner," was properly classified under item 713.17 of the Tariff Schedules of the United States (TSUS), providing for "stroboscopes of all kinds."

The subject merchandise, entered at the port of Chicago, Illinois, in 1981, and invoiced as a "chromatic tuning stroboscope," is an

---

electronic device that, according to its operations manual, "employs the stroboscopic principle in its measurement of sound frequencies, by which the frequency of the sound introduced is to be compared visually with a standard frequency in the set." Plaintiff's Exhibit 6, at 3. The article consists of two units, a strobo unit and a dial unit, along with a microphone. The dual unit has twelve fan-shaped windows arranged in two rows. The seven windows in the lower row correspond to the seven white piano keys within an octave. The five windows in the upper row correspond to the black piano keys within the same octave. Appearing in each window is a pattern disc. When the device is in operation, these discs rotate at varying relative speeds according to a mathematical ratio. When a musical note is introduced into the strobo tuner through the microphone, an internal neon light is activated that illuminates the windows. This light flashes at the same frequency as the vibration of the musical sound. In the window corresponding to the tone introduced, the pattern disc appears to come to a standstill. In this manner, the stroboscopic effect is used to measure sound frequency and thus can be applied to tune the instrument.

The United States Customs Service (Customs) classified the merchandise under item 713.17, TSUS, which provides:

> Stroboscopes of all kinds, and
> parts thereof:.
> Stroboscopes........................ 95¢ each + 14.9%
> ad val.

Plaintiff seeks classification of the merchandise under item 726.10 of the TSUS, which covers:

> Metronomes, pitch pipes,
> tuning forks, and tuning
> hammers, all the foregoing
> for whatever use intended.    6.1% ad val.

In short, plaintiff claims that the merchandise, although it utilizes a stroboscopic principle, ought to be classified according to its use as a tuning instrument. There is no dispute that the device is used solely in connection with the tuning of musical instruments. This fact, in plaintiff's view, precludes classification as a stroboscope.

Defendant on the other hand, justifies the challenged classification by pointing to invoice descriptions, advertising materials and catalogs, which denominate the merchandise as a "stroboscope." Defendant further assert that item 713.17 should be broadly construed to encompass all "forms" of stroboscopes.

The court has little difficulty in upholding the classification promulgated by Customs. First, descriptions of the merchandise appearing in invoices, bills of lading, and the operations manual clearly refer to the unit as a stroboscope. Indeed, the unit itself has the word "strobo scope" emblazoned on its front panel. Such descriptions are evidence of what the parties, and, presumably, the commercial world, consider the merchandise to be. *See, Swift Instruments, Inc.* v. *United States,* 4 CIT 88, 92–93, 554 F. Supp. 1235, 1239 (1982), *aff'd,* 714 F.2d 161 (Fed. Cir. 1983). In addition, a witness for the defendant, a management employee at the C.G. Conn Company, testified that the strobo tuner is understood to be a stroboscope in the trade and commerce of the United States. This was so, he further testified, because of the operation of the unit and despite the fact that it is used as a tuning device. Transcript, at 111. Further, the provision in dispute here, item 713.17, which provides for "stroboscopes of all kinds," is eo nomine and broad in scope. Plaintiff points to no legislative history or judicial decision that would cast a limit on item 713.17. Absent this showing, the designation should include all forms of the article. *T.M. Duche & Sons, Inc.* v. *United States,* 44 CCPA 60, 63 (1957) (citing *Cross & Blackwell Co.* v. *United States,* 36 CCPA 33, 35 (1948) (quoting *Nootka Packing Co.* v. *United States,* 22 CCPA 464, 470 (1935)).

Plaintiff's assertions that the classification here should be controlled by use are unavailing. There is no dispute that the merchandise is used solely in connection with the tuning of musical instruments. Nevertheless, the use of the stroboscopic principle is the overriding consideration here. Scientific authorities define stroboscopes by their use of light and their resultant effect on how objects appear to move. *See, e.g., Van Nostrand's Scientific Encyclopedia* 2104 (D. Considine 5th ed. 1976) ("more accurate stroboscopes utilize a flashing light to illuminate the moving machine"). The same principles are at work in the strobo tuner. Despite its musical applications, such use is not properly considered by this court where the eo nomine designation is "clear and unambiguous, and without suggestion that the element of 'use' [should] have any influence in classifying merchandise thereunder." *F.W. Myers & Co.* v. *United States,* 20 Cust. Ct. 152, 156 (1948), *modified,* 24 Cust. Ct. 178 (1950).

Accordingly, the classification of the District Director of Customs at the Port of Chicago, Illinois, is sustained. Parties will bear their own costs and fees.

A judgment will enter accordingly.